THE CITY OF CHICAGO

*v.*

EVERT BAKER.

*Opinion filed February 21, 1902.*

1. SIDEWALKS—*liability of city for injuries received on walk built on private property.* A municipal corporation is liable for injuries received from defective sidewalks constructed on private property when they are treated by the municipality as public walks and permitted to be used as such.

2. SAME—*whether it was the duty of a city to erect railing is a question of fact.* Whether, in a particular case, it was the duty of the city to erect a railing or barrier at the blind end of a plank walk to keep persons from falling down an inclined driveway is a question of fact, although the walk is on private property and adjoins the real sidewalk at the lot line, nothing indicating the boundary.

3. EVIDENCE—*what competent in suit against city for damages.* In an action against a city for damages for injuries received by plaintiff in walking off the blind end of a walk built on private property but adjoining the public sidewalk, it is proper to permit plaintiff to prove that there was a board fence there at one time which had blown down, since the city could show, on cross-examination, who placed the fence there or introduce affirmative testimony as to its knowledge of the fence, or, by instruction, limit the testimony to its proper application.

*City of Chicago* v. *Baker*, 95 Ill. App. 413, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. M. KAVANAGH, Judge, presiding.

Appellee sued appellant in the superior court of Cook county to recover damages for an injury to his person, alleged to have been caused through the negligence of the defendant city. The amended declaration, upon which the trial was had, consisted of two counts. The first alleged that it was the duty of defendant to keep its streets in a reasonably safe condition and repair, but that it failed and neglected "to keep and maintain any railing, guard or protection of any kind whatsoever upon the sidewalk upon the west side of Canal street to protect and prevent persons from stepping or falling from said sidewalk, said sidewalk being, at the time and place aforesaid, elevated above the ground a certain long distance, by reason whereof and as the result of the negligence of the defendant in the premises, and while the said plaintiff was walking along upon said sidewalk in the exercise of due care, and in the night time, he then and there, without any fault or negligence on his part, departed from said sidewalk by reason of the absence of the railing or other protection thereon, as aforesaid, and did then and there fall to and upon the ground below, a distance of, to-wit, twenty feet, as the result of which he sustained many and divers wounds, bruises, cuts and injuries," etc. By the second count it is charged that defendant failed to properly maintain the street so as to render the same safe to persons passing along the same, in that it failed to place any reasonable and sufficient lights thereon, so that the plaintiff, while walking along upon the sidewalk on said street, in the night time, departed "from said walk, there being no guard, railing or protection whatsoever thereon, as aforesaid, and did then and there fall to and upon the ground be-

low, a distance of, to-wit, twenty feet, as the result of which he sustained many and divers wounds, bruises, cuts and injuries," etc. The plea was not guilty and the trial by jury, resulting in a verdict for the plaintiff for $12,833. Six thousand eight hundred and thirty-three dollars of this amount was remitted by the plaintiff on the motion for new trial, at the suggestion of the court and as a condition to the overruling of said motion. The city appealed to the Appellate Court for the First District, where that judgment was affirmed.

The following plat introduced in evidence shows the situation of the sidewalk and surroundings at the place of the accident:

Preceding the opinion of the Appellate Court is the following explanation of the plat: "The space marked

'sidewalk' is a planked sidewalk twelve feet wide on the west side of Canal street, and the west side of that sidewalk is the west line of the street. The shaded space marked 'plank sidewalk' is on private ground, and is in width, from east to west, twelve feet, and fifty feet in length from north to south. This sidewalk and the sidewalk first mentioned are on the same plane, on a level. There is no visible line of demarkation between them. Apparently they are parts of a single sidewalk. The space next south of the space marked 'plank sidewalk,' which is marked 'planked inclined driveway,' is, as the name indicates, an inclined driveway. It is ten to twelve feet wide from north to south, and runs down on a decline from the west line of the sidewalk on the west side of Canal street to the ground, inside a vacant lot. The triangle at the south-east corner of the plat shows the decline of the driveway. Between the east end of the building marked 'two-story frame building' on the plat, and the 'planked incline driveway,' is an open space, the width of which, from north to south, is estimated by the witnesses at from five to eight feet. The perpendicular distance from the sidewalk to the ground is estimated * * * at from ten to fifteen feet." The statement then proceeds: "Claussen, who had been a private watchman in the vicinity of the place in question for about five years before the accident, testified that the sidewalk, including the space marked 'plank sidewalk,' had been in the condition above described for a long time, with the exception that about a year before the time of the accident there was a fence or barricade at the place where it happened. There was no guard of any kind on the north or east side of the inclined driveway at the time of the accident, nor had there been for a year."

It appears from the evidence that formerly the two-story frame building north of the driveway was used as a machine shop, and that the space marked "plank sidewalk" in front of the building was used by the occupant

of the shop to place machinery on, but that such use was discontinued about three years before the accident, since which time it was used by the public as a part of the sidewalk. Several witnesses testified that the space marked "plank sidewalk" was used by the public as a passway along the street, the same as the regular sidewalk with which it was connected. Frank Huntley, who was with the plaintiff at the time of the accident, testified that he and Baker walked from the east side of Canal street diagonally in a south-west direction until they reached the sidewalk on the west side of Canal street, and that the plaintiff, being on the right side of the witness, stepped off of the inclined driveway, and he ran against a post on the north side of the hole between the building and the driveway. He says they were walking about twelve feet from the curb when the accident occurred. After the plaintiff disappeared he went down the driveway and found him, and then went to the next door and procured help, and he was taken up in an unconscious condition and sent to the hospital. The accident happened about nine o'clock at night.

At the close of the plaintiff's evidence the defendant asked the court to instruct the jury to return a verdict of not guilty, which being overruled, it introduced its evidence and then renewed the request, which was again denied.

ANDREW J. RYAN, and JAMES J. KELLY, for appellant.

FRANCIS T. MURPHY, and THADDEUS S. ALLEE, (EDWARD C. HIGGINS, of counsel,) for appellee.

Mr. CHIEF JUSTICE WILKIN delivered the opinion of the court:

The principal proposition advanced by counsel for appellant upon which a reversal of the judgment below is urged is, "that a municipal corporation is under no obli-

gation to erect barriers to prevent persons of the public straying from the limits of its highways." It can scarcely be contended that this is a correct statement of the law as applicable to all cases, and the authorities cited in support of it clearly show that it is not. All that is held by those cases is, that under the facts there presented it was not negligence on the part of the municipality to fail to erect and maintain such barriers, and they are all reconcilable with the rule announced in *Stockwell* v. *Inhabitants of Fitchburg*, 110 Mass. 305, (one of the cases cited,) in which it is said: "But towns are not obliged to erect railings for the mere purpose of preventing travelers from passing beyond the limits of the highway. Railings are necessary when defects are in such close proximity to the traveled way as to make it unsafe to travel upon it and near its boundary, and not otherwise,"—citing several Massachusetts cases. It was said in *Davis* v. *Hill*, 41 N. H. 329: "It seems entirely clear, upon the authorities, that the want of a sufficient railing, barrier and protection to prevent travelers passing upon a highway from running into some dangerous excavation or pond, or against a wall, stones or other dangerous obstructions without the limits of the road but in the general direction of the travel thereon, may be properly alleged as a defect in the highway." And again, by Judge Thompson in his work on Negligence, (vol. 2, p. 769): "When the limits of the highway are not indicated by any visible objects, and there is nothing to show a person driving thereon in the evening that the course he is pursuing is not within the way intended for public travel, the town is liable for an accident to a traveler resulting from a defect within the general course and direction of travel, where travelers are accustomed to pass along the highway, although without the limits of the located way, if so near as to render the traveling thereon dangerous in the condition in which it is at the time of the accident, and there is nothing to give travelers

notice of the defect until it is too late to avoid it." We have held that a municipality is liable for injuries resulting from defective sidewalks even though they are constructed on private property, when they are treated by the municipality as public walks and permitted to be used as such. (*Village of Mansfield* v. *Moore,* 124 Ill. 133; *Hogan* v. *City of Chicago,* 168 id. 551.) Whether or not it was the duty of the city to erect a railing or other barrier to prevent persons passing along the sidewalk on the west side of Canal street from falling down the inclined driveway or into the hole between the driveway and the frame building, cannot, therefore, be a question of law, but is purely one of fact.

It is not claimed that the court committed error in its rulings upon instructions to the jury, and the only objection to the introduction of evidence on behalf of the plaintiff was as to testimony to the effect that some time prior to the accident there had been a "tie-board fence on the north side of the inclined driveway," which had been blown down. It is insisted that this evidence tended "to lead the jury to think that the appellant should have maintained a fence along the east side of the plank platform at the point where the appellee left the sidewalk." Conceding that the objection to that evidence was sufficiently specific to raise the question of its competency, there was no error in admitting it. The plaintiff had the right to prove all the surroundings of the place where the accident occurred,—not only at the immediate time but within reasonable limits prior thereto,—and the defendant, if it saw proper, could, upon cross-examination, show who placed the fence there, introduce affirmative evidence as to its knowledge of the fact that it was there, and by proper instructions limit the testimony to its legitimate application in the case. There is, therefore, no error of law insisted upon in this court well assigned, unless it could be said the trial court erred in refusing to take the case from the jury. It cannot be se-

riously contended that there was no evidence produced upon the trial fairly tending to show that, under the foregoing authorities, it was the duty of the city to erect proper and necessary railings to prevent injuries to pedestrians passing along the sidewalk of that street. That question was for the jury, and the court very properly refused to withdraw it from its consideration.

The further contention that the trial court erred in refusing to arrest the judgment on the second count of the declaration, under this view becomes unimportant. There was, however, no such error. That the count alleges a good cause of action in substance is not denied, but it is said there was no proof whatever in the record tending to support it. It is admitted that at least one witness testified that the street was defectively lighted by a lamp at the corner of Polk and Canal streets, some distance from the place of the injury. While it is insisted that upon the authority of *City of Freeport* v. *Isbell*, 83 Ill. 440, a city is not bound to light its streets, (upon which proposition we express no opinion,) yet it is not denied that where it undertakes to do so it must properly light the same. While the evidence as to the city of Chicago having assumed that duty as to Canal street is slight, it cannot be said there is no evidence tending to prove the fact, hence it was for the jury, under the instructions of the court, to determine whether the allegations of the second count were proved or not, and it cannot be made the subject of review here.

The opinion of the Appellate Court, by ADAMS, P. J., correctly and ably disposes of all the questions arising upon this record.

The judgment of the Appellate Court will accordingly be affirmed.                                    *Judgment affirmed.*