## City of Chicago v. Fred Kubler.

### Gen. No. 13,211.

1. JUDICIAL NOTICE—*of what taken.* It is intimated in this opinion that the court would be justified in taking judicial notice that the Chicago river at Erie street is within the municipal domain of the city of Chicago.

2. STREETS—*what does not shift municipal liability for safety of.* The liability of a municipality for its failure to keep its streets in a reasonably safe condition is not affected by the fact that a traction company has undertaken so to keep the same, or the portion thereof in question with respect to the injury complained of.

3. CONTRIBUTORY NEGLIGENCE—*how question of, determined, where plaintiff at the time of the injury was driving upon a street known by him to be dangerous.* It is not negligence *per se* for a person to drive over a public street known by him to be dangerous. The question is one, however, to be determined by the jury from all the facts and circumstances in evidence.

4. INSTRUCTIONS—*when substantial accuracy sufficient.* Substantial accuracy in instructions is sufficient where the evidence of the plaintiff justified the verdict rendered and the defense interposed no countervailing testimony.

5. ORDINARY CARE—*when instruction as to, invades province of jury.* An instruction which undertakes to tell the jury as to what facts do or do not constitute the exercise of ordinary care, invades the province of the jury. The facts which constitute that degree of care which satisfies the requirements of the law as amounting to reasonable care, is a question of fact for the jury, to be gathered from the proofs.

Action in case for personal injuries. Appeal from the Circuit Court of Cook County; the Hon. PAUL MCWILLIAMS, Judge, presiding. Heard in this court at the October term, 1906. Affirmed. Opinion filed April 29, 1907.

FRANK D. AYERS, for appellant; WILLIAM S. KIES, of counsel.

CARL A. VOGEL, for appellee; DANIEL V. GALLERY, of counsel.

MR. JUSTICE HOLDOM delivered the opinion of the court.

Appellant brings the record here for review from a judgment against it in favor of appellee for $4,500, for a personal injury to appellee, resulting from the negligent and defective maintenance of the east approach to a bridge crossing the Chicago river at Erie street in appellant municipality. The injuries suffered by appellee were severe. His foot was amputated first and twice thereafter he underwent amputations of the leg, occasioned, we gather from the evidence, by the presence of septic symptoms arising from infection absorbed into his system from the mud in the street being ground into the limb when the wagon crushed it in passing over it. Appellee was a teamster at the time of the accident, driving a team attached to a large box wagon belonging to Lafrenz & Carson, his employers. On the day of the accident—the exact day does not appear in the record, but it was some time in October, 1902—appellee, with a wagon and team, went to the freight yards of the Northwestern Railroad after some grain, driving from the place of business of his employers at the northwest corner of Erie and Franklin streets. In going to the freight yards he drove west on the north side of Erie street. He observed on the way that the south side of Erie street was in a condition of unrepair, rutty with many holes and depressions of varying sizes. In the vicinity of the place of the accident the freight yards of the Chicago, Milwaukee & St. Paul Railway are located, and much heavy teaming in hauling freight to and from the freight yards of the railroads mentioned is constantly moving over and along Erie street. An electrically propelled street car service is also maintained on double tracks across the Erie street bridge and on the roadway east and west of the bridge. The constant passage of these cars

makes it necessary for the vehicular traffic to proceed the major portion of the time to the north and south of the car tracks. At the time of the accident, about six o'clock in the evening, it was dark. The lights maintained on the street by the city it is said were dim. In crossing the bridge appellee says he drove his wagon upon the rails of the street car track, the wagon wheels remaining on the rails during its passage over the bridge.

Appellee testifies that in passing off the bridge to the incline in Erie street, it was his purpose and endeavor to keep the wheels of the wagon on the street car rails and thereby avoid the dangers of the ruts and holes in the roadway, but he failed to "catch" the track because of the presence of a sharp curve from the bridge to the street. There were holes in the street, over which he guided his wagon carefully, proceeding slowly, holding his team back as much as possible. In the darkness he could not see all the holes in his path, or avoid all the dangers which menaced his progress consequent upon the negligent condition in which the city there maintained the street. The right wheel of the wagon dropped into a hole; appellee thereupon braced himself; the wagon then bumped hard, jumping him on the spring seat on which he sat, and at the second bump he lost his equilibrium and was thrown from the wagon forward into the street, striking the off horse in his descent, landing under the wagon, the right rear wheel of which passed over his foot, and receiving the injuries already recited. The wagon weighed 2,260 pounds, and the load on it about half a ton.

It is unnecessary to recite the evidence further, for an examination of it fails to disclose any material contradiction of appellee's account of the occurrences attending the accident or the injuries suffered by him in consequence of it.

It is very evident if the city is liable in this action to appellee, because the injuries sustained by him are attributable to the negligence of the city as charged, then the amount of the recovery is not excessive and constitutes but a moderate compensation for the painful and permanent injuries suffered by appellee as the result of the accident.

City of Chicago v. Kubler.

Many errors are assigned on the record and argued in defendant's brief, but we do not regard it as necessary or instructive to attempt to follow counsel chronologically in their wanderings in either path in order to reach a decision.

The argument in its ultimate analysis presents for our determination the questions whether or not the trial court erred in not giving the peremptory instruction asked by appellant at the close of all the evidence to find a verdict for the city, and in refusing certain instructions proffered by it, and in not giving instruction 13 as rendered, and in modifying the same and giving it as modified, and in giving certain instructions at the instance of appellee.

A captious and wholly unmeritorious objection is raised by appellant's contention that there is no proof in the record that the place of the accident at Erie street near the Chicago river is not within the municipal boundaries. We are not prepared to say that, with the geographical knowledge assumedly at least possessed by the court, it would be violative of any legal principle for the court to take judicial cognizance of the fact that the Chicago river at Erie street is within the municipal domain; but were we not permitted so to do by the strict rules of law, we find a statement in the first page of appellant's brief that the cause of action arises from appellee's claim that he was "thrown from his wagon while driving on Erie street, city of Chicago." Were this not sufficient to establish the fact that the place of the mishap was within the municipal corporate limits, we turn to the record and find proof of that fact established by appellant in the only evidence it introduced. This was an ordinance of the city of Chicago, passed by its Common Council, September 12, 1894, granting the right to the North Chicago Street Railway Company to lay its car tracks in Erie street east of the Chicago river. The purpose for which the evidence was offered, it is true, was not intended to have the effect to supply any supposed omission in appellee's proof as to the accident happening within the city of Chicago, but such was the only useful purpose it served. It was worthless as evidence tending to shift the liability from the city to that

of the street car company, because by the terms of the ordinance, which it accepted, the duty of keeping 16 feet of the roadbed upon which its tracks were laid in good repair and condition was imposed. For a neglect to keep the street in sufficiently good repair for the safe operation of traffic over it, the city is liable for damages flowing from accidents resulting from a condition of unrepair regardless of the liability of the street car company to the city for a breach of a duty imposed upon it by such ordinance.

The city appeared and filed a plea of not guilty. On the the trial it put in its defense. It is bound by its acts and by the record, and estopped from now raising the territorial question.

It is urged that appellee knew of the dangers to be encountered in driving over Erie street in the unsafe condition in which it was, and that he is precluded from now complaining of the injuries suffered with knowledge of that condition, and that negligence from such knowledge is attributable to him. We fail to see any force or merit in this contention, viewed from the undisputed facts appearing in this record. The duty imposed by law upon the city is to keep its streets in a safe condition of repair, so that those passing over them on foot or with teams and vehicles may do so, with the exercise of ordinary care, in safety. A failure so to maintain the streets charges the city with responsibility to the injured party for accidents suffered by reason thereof, when the city is guilty of negligence in suffering such dangerous condition to exist after either actual or constructive notice to it of the unsafe condition. There is no hardship in this rule of law. The streets are within the exclusive control of the city. If a street is dangerous for travel, it has the power to close it, pending repairs. When in a condition needing repaving, it has the legal power to repave at the expense of the abutting property owners, under appropriate legal proceedings authorized by the statutes of the State. The duty imposed is amply compensated by power conferred.

Appellee had some knowledge of the perils of travel over

Erie street at the point of the accident. His evidence establishes the fact that he was traveling the ordinary and usual route from the freight yards of the Northwestern Railroad to the place of business of his employer. He details with certainty, and to our satisfaction, the measure of care with which he drove his team. In the condition which environed him—about which his evidence is undisputed—with the ruts and holes laying in his path, with the sharp curve in the track leading from the bridge to the street, with the illy lighted street and the darkness of the night, it was for the jury to say whether or not at the time of the unfortunate occurrence in question appellee was in the exercise of ordinary care for his own safety, in view of his knowledge of the unsafe road over which he was driving, and whether his conduct was prudent and reasonable for the protection of himself from harm at the time he was thrown from his wagon. With the finding of the jury on these questions, we see no just cause in this record to disagree. The negligence of the city is virtually conceded. It is of a glaring and inexcusable character. It is twofold, first, in permitting the roadbed to remain in the bad condition proven, and, second, in not providing sufficient light to enable the defects to be seen by those using the street. City of Critchfield v. Anglim, 83 Ill. App., 55; City of Vandalia v. Ropp, 39 Ill. App., 344.

There is no proof here of a better way than that traversed by appellee. He was admittedly about his lawful employment as a teamster, using the ordinary and usual public highway in the prosecution of his calling, and in no way negligent. Chicago v. Baker, 95 Ill. App., 413, approved in 195 Ill., 54. As said by Mr. Justice Adams in the opinion adopted by the Supreme Court in the Baker case, *supra:* "Appellant's counsel argue that although the city had power to light the streets, it not appearing from the evidence, as they claim, that it had undertaken to exercise that power, the duty was not incumbent upon it to maintain lights, and therefore appellee could not rely upon the absence of light. This position was untenable. The place was a dangerous

one, and it was the duty of appellant to protect passers-by against the danger in some way  *  *  *  by a light that would disclose the danger." Here the dereliction of the city is accentuated from the fact that while it undertook the duty of furnishing light, it did so inadequately. Town of Normal v. Gresham, 49 Ill. App., 196.

The duty of a city in regard to maintaining its streets in a safe condition, knowledge of dangerous condition of the street, and the lack of necessity to go another and safer way in view of such knowledge, is discussed and disposed of contrary to the contention of appellant on these points in City of Mattoon v. Faller, 217 Ill., 273.

The evidence supporting this judgment is not disputed. There is no countervailing testimony on the part of appellant. Appellee's evidence stands in this record without challenge. In these circumstances the law does not require legal exactitude in the instructions upon the law, providing there is no such infirmity in the instructions which we can say operated to mislead the jury as to the pertinent legal propositions to be applied to the undisputed facts in reaching their verdict, operating injuriously to affect the rights of appellant under the law.

Instruction 13, as tendered by appellant, we regard as proper, and if it had been given by the court without modification, its action in so doing would not have been error. Neither are we able to discover, however, that the addition by the trial judge, modifying it, detracted from the legal propositions contained in the instruction as offered, nor that it is subject to the objection made of being contradictory. The statement of the general rule in weighing the evidence of witnesses in no sense detracted from the preceding statement that in so doing the jury should take into consideration that appellee was the plaintiff and interested in the result of the suit. This instruction as given was in harmony with instruction 10 given at the request of appellant.

We have carefully examined all the instructions given, as well as those refused, and are of the opinion that the jury were fully and fairly instructed upon every material prin-

City of Chicago v. Kubler.

ciple of law reasonably applicable to the proof, and that no reversible error appears in the instructions given, and that those refused were either superfluous as being sufficiently covered by instructions given, or were unnecessary, as the jury were sufficiently instructed on the law without them.   Instruction 15 was certainly vicious in invading, if given, the province of the jury in determining from all the facts in evidence, including the darkness of the night and the lack of artificial light, whether or not the plaintiff was in the exercise of due and ordinary care when he met with the accident.

The facts which constitute that degree of care which satisfies the requirements of the law as amounting to reasonable care, is a question of fact for the jury, to be gathered from the proofs, and not of law for determination by the court, and any instruction which attempts to direct the attention of the jury to facts or conditions as constituting either ordinary care, or the lack of it, is objectionable.   Chicago v. McLean, 133 Ill., 148; Village of Clayton v. Brooks, 150 Ill., 97.

The damages awarded do not appeal to us as being excessive, but on the contrary we regard them as quite moderate, if not somewhat meager compensation for the severe, painful and permanent injuries which afflicted appellee, occasioned by the negligence of the city.   While we do not regard the testimony as to the sums paid for surgical services, hospital dues and medicines as being improperly admitted, still, if such proof was vulnerable to the objection made, and such testimony had been eliminated from the record, the judgment could not be disturbed for the injuries proven without the addition of these expenses fully justified the assessment of damages to the amount of the judgment.

There is no reversible error in this record, and the judgment of the Circuit Court is affirmed.

*Affirmed.*